No. 22-30573

# In the United States Court of Appeals for the Fifth Circuit

―――――――――――――

ROBERT L. SALIM

*Plaintiff-Appellee,*

v.

LOUISIANA HEALTH SERVICE & INDEMNITY COMPANY D/B/A BLUE CROSS AND BLUE SHIELD OF LOUISIANA

*Defendant-Appellant.*

―――――――――――――

On Appeal from the United States District Court for the
Western District of Louisiana, Alexandria Division
Civil Action No. 1:19-cv-00442

―――――――――――――

**BRIEF OF APPELLANT
LOUISIANA HEALTH SERVICE & INDEMNITY COMPANY**

―――――――――――――

Richard A. Sherburne, Jr. (LA Bar No. 02106)
Jessica W. Chapman (LA Bar No. 31097)
Douglas M. Chapoton (LA Bar No. 25616)
Erica S. Aguillard (LA Bar No. 34753)
5525 Reitz Avenue (70809)
Post Office Box 98029
Baton Rouge, Louisiana 70898-9029
Telephone: (225) 298-1444
Facsimile: (225) 297-2760
Richard.Sherburne@bcbsla.com
Jessica.Chapman@bcbsla.com
Douglas.Chapoton@bcbsla.com
Erica.Aguillard@bcbsla.com

*Counsel for Defendant-Appellant, Louisiana
Health Service & Indemnity Company*

## CERTIFICATE OF INTERESTED PERSONS

Appellant certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal:

1) **Plaintiff-Appellees**:

   Robert L. Salim. Mr. Salim is a member of the law firm of ROBERT A. SALIM, APC.

2) **Defendant-Appellant**:

   Louisiana Health Service & Indemnity Company d/b/a Blue Cross and Blue Shield of Louisiana (BCBSLA). BCBSLA asserts that there is no parent corporation or publicly held corporation owning 10% or more of its stock.

3) **Other Plaintiffs and Defendants in Underlying Case**:

   None

4) **Other Financially Interested Parties**:

   Fully Insured Group Plans subject to Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*(ERISA)*,* insured by BCBSLA.

5) **Counsel for Plaintiff-Appellee**:

   Ronald E. Corkern, Jr. of the law firm CORKERN, CREWS & GUILLET, LLC.

6)     **Counsel for Defendant-Appellant**

Douglas M. Chapoton, Richard Sherburne, Jr, Jessica W. Chapman, and

Erica S. Aguillard - in house counsel for BCBSLA.

*/s/ Douglas M. Chapoton*
Douglas M. Chapoton, Attorney for Appellant

## STATEMENT REGARDING ORAL ARGUMENT

Defendant-Appellant BCBSLA requests oral argument as it believes it could significantly aid the decision making process in this case on the important issue of interpretation of an employee benefit plan[1] governed by ERISA.

---

[1] PPO GroupCare Group Health Benefit Plan, Contract XXXXX1635 ("Plan"), was issued to Robert L. Salim, APC and provided coverage for Appellee, Salim. (ROA. 618).

# **TABLE OF CONTENTS**

Certificate of Interested Persons ..............................................................1

Statement Regarding Oral Argument. ........................................................3

Table of Contents ......................................................................................4

Table of Authorities ..................................................................................5

Jurisdictional Statement ............................................................................7

Issues Presented ........................................................................................8

Statement of the Case ..............................................................................10

Summary of the Argument .......................................................................15

Argument .................................................................................................20

      I. Standard of Review ......................................................................20

      II. ERISA Review Standard - District Court ...................................20

         1. The District Court Used the Incorrect Standard of Review
            for ERISA Benefit Cases ...................................................22

         2. The District Court did not Follow this Honorable Court's Two-Step
            Process when Conducting [an] Abuse of Discretion Review .............24

         3. BCBSLA Did Not Abuse its Discretion Based on the Evidence in the
            AR ......................................................................................31

Conclusion ..............................................................................................34

Certificate of Service .............................................................................. 36

Certificate of Compliance .......................................................................37

# TABLE OF AUTHORITIES

## Cases

*Aucoin v. RSW Holdings, L.L.C.,*
    494 F.Supp.2d 418 (M.D. La. 2007) ..................................... 8, 15, 20, 23, 24

*Baxter v. MBA Group Ins. Trust Health and Welfare Plan*,
    958 F.Supp.2d 1223 (W.D.Wash. 2013) ................................. 32, 33

*Bellaire Gen. Hosp. v. Blue Cross Blue Shield of Michigan*,
    97 F.3d 822 (5th Cir. 1996) ...............................................22

*Ellis v. Liberty Life Assur. Co. of Boston,*
    394 F.3d 262 (5th Cir.2004) ...............................................21

*Firestone Tire & Rubber Co. v. Bruch*,
    489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989) ...................................29

*Gooden v. Provident Life & Accident Insurance Co.,*
    250 F.3d 329 (5th Cir. 2001) .........................................21

*High v. E–Systems, Inc.,*
    459 F.3d 573 (5th Cir. 2006) ...................................................8, 20

*In re Roy*,
726 So.2d 1048, 31,383 La.App. 2 Cir. 1/20/99, 3 (La.App. 2 Cir. 1999)....... 29, 30

*Koch v. Metropolitan Life Insurance Company*,
    425 F.Supp.3d 741 (N.D.Tex. 2019) ............................................28

*Lafleur v. Louisiana Health Service and Indem. Co.*,
    563 F.3d 148 (5th Cir. 2009) ........................................20

*Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc.,*
    168 F.3d 211 (5th Cir. 1999) .......................................... 8, 15, 20, 22, 23, 24

*Perdue v. Burger King Corp.*,
    7 F.3d 1251 (5th Cir. 1993) .........................................28

*Ryan by Capria–Ryan v. Federal Express Corp.*,
   78 F.3d 123 (3d Cir. 1996) ...................................................... 29, 30

*Stone v. Unocal Termination Allowance Plan*,
   570 F.3d 252 (5th Cir. 2009) ...................................... 8, 20, 21, 24

*Sunbeam-Oster Co. Group Ben. v. Whitehurst*,
   102 F.3d 1368 (5th Cir. 1996) ...................................................30

*Tolson v. Avondale Industries, Inc.*,
   141 F.3d 604 (5th Cir.1998) ................................................ 21, 24

*Truitt v. Unum Life Ins. Co. of Am.*,
   729 F.3d 497 (5th Cir. 2013), cert. denied, -- U.S. --,
   134 S.Ct. 1761, 188 L.Ed.2d 593 (2014).......................................21

*Vega v. Nat'l Life Ins. Servs., Inc.*,
   188 F.3d 287 (5th Cir. 1999) ................................................ 21, 22

*Wade v. Hewlett–Packard Dev. Co. LP Short Term Disability Plan*,
   493 F.3d 533 (5th Cir. 2007) ................................................ 20, 22

## **Statutes**

28 U.S.C. § 1291 .......................................................................7

Employee Retirement Income Security Act of 1974 ("ERISA"),
   29 U.S.C. § 1001, *et seq* ......................... 1, 3, 8, 12, 15, 20, 21, 22, 28, 29, 30

## **Rules**

5th Cir. R. 28.2.1 .......................................................................1

# JURISDICTIONAL STATEMENT

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. BCBSLA timely filed a Notice of Appeal[2] within thirty (30) days from the date the District Court entered the Amended Judgment[3] in favor of Appellee/Plaintiff, Salim, reversed the denial of benefits by BCBSLA for proton beam therapy ("PBT"), and remanded the matter to BCBSLA for submission of those claims by Salim and/or his medical care providers, and for a full and fair determination of benefits due under the Plan as to those claims for PBT.

The Amended Judgment of the Court entered on August 11, 2022 also dismissed Salim's claim for penalties, denied BCBSLA's Motion for New Trial[4] as moot in light of the Amended Judgment, and remanded the issue of attorney fees back to the Magistrate Judge.

---

[2] ROA. 238-239
[3] ROA. 222-223
[4] ROA. 195-199

## **ISSUES PRESENTED**

"Under ERISA, when the language of an ERISA plan grants discretion to an administrator, as in this case [sic], to interpret the plan and determine eligibility for benefits, a court will reverse an administrator's decision only for abuse of discretion."[5] BCBSLA appeals the District Court's Amended Judgment because the District Court committed legal error in rendering judgment for Plaintiff.

The following issues are presented for review in this appeal:

1. **THE DISTRICT COURT USED THE INCORRECT STANDARD OF REVIEW FOR ERISA BENEFIT CASES**

2. **IT IS AN ERROR OF LAW FOR THE DISTRICT COURT TO NOT APPLY THE UNITED STATES FIFTH CIRCUIT COURT OF APPEALS' "TWO-STEP PROCESS WHEN CONDUCTING [AN] ABUSE OF DISCRETION REVIEW" OF BCBSLA'S DENIAL IN THIS MATTER**[6]

A. Was it legal error for the District Court to find that Plaintiff's case does not present issues as to Salim's eligibility for benefits under the Plan?

---

[5] *Aucoin v. RSW Holdings, L.L.C.*, 494 F.Supp.2d 418, 421–22 (M.D. La. 2007); citing *High v. E–Systems, Inc.,* 459 F.3d 573 (5th Cir. 2006); *Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc.,* 168 F.3d 211, 213 (5th Cir. 1999).
[6] *Stone v. Unocal Termination Allowance Plan*, 570 F.3d 252, 257 (5th Cir. 2009).

B. Was it legal error for the District Court to find that Plaintiff's case does not pertain to BCBSLA's construction of the terms of the Plan despite the fact that the only place the term "medically necessary" is defined is in the Plan?[7]

C. Was it legal error for the District Court to reverse BCBSLA's denial of Salim's claim for PBT to treat neck and throat cancer when the District Court did not consider the definition of "Medically Necessary" in the Plan and went beyond the terms of the Plan in interpreting "Medically Necessary"?[8]

3.    **IT IS AN ERROR OF LAW FOR THE DISTRICT COURT TO GRANT SUMMARY JUDGMENT FOR SALIM AND FIND THAT BCBSLA ABUSED ITS DISCRETION IN DENYING SALIM'S CLAIMS FOR PROTON BEAM THERAPY ("PBT") TO TREAT NECK AND THROAT CANCER.**

A. Was it legal error to hold that BCBSLA abused its discretion in finding that PBT is not the accepted standard of care for his head and neck cancer and thereby not "Medically Necessary" pursuant to the terms of the Plan despite the concrete evidence in the AR?[9]

B. Does the AR contain substantial and concrete evidence to prove that Salim carried his burden of proving that PBT was a nationally accepted standard of

---

[7] ROA. 147
[8] (ROA. 635) ROA. 151 Fn 8
[9] ROA. 147

care for advanced head and neck cancer in 2018 and thereby proving that it was "Medically Necessary" under the Plan?[10]

## STATEMENT OF THE CASE

The Plan[11], was issued to Robert L. Salim, APC and provided coverage for Salim, with an original effective date of May 1, 2009, including Employee Enrollment Form and Schedule of Benefits for amended effective date May 1, 2018.[12] Salim was diagnosed with throat cancer in or around September 2018.[13] Salim sought treatment from MD Anderson Cancer Center. On October 10, 2018, an authorization request for PBT from M.D. Anderson Cancer Center was sent to BCBSLA.[14] On October 12, 2018, after a review of Plaintiff's request by AIM Specialty Health ("AIM")[15], Deidre Barfield, Senior Medical Director of BCBSLA, sent a letter to Salim denying authorization for *Proton Treatment Delivery, Simple* as not medically necessary.[16,17]  On October 12, 2018, BCBSLA also denied authorization for *Special Radiation Treatment Procedure* and *Guidance for*

---

[10] ROA. 147-149
[11] *See* FN 1
[12] ROA. 601-719
[13] ROA. 724-725
[14] ROA. 720-729
[15] ROA. 746
[16] ROA. 730-734
[17] AIM Specialty Health ("AIM") assists in the management of BCBSLA health benefits plans. AIM is an independent company that provides utilization management for certain services on behalf of BCBSLA.

*Localization of Target Delivery of Radiation Treatment Delivery* as not medically necessary.[18]

On October 17, 2018, Salim sent a letter to Juanita I. Rodriguez of BCBSLA stating the company was arbitrary and capricious in its denial of the proton beam therapy.[19] BCBSLA treated the October 17, 2018 letter as Salim instituting a first level appeal under his contract.[20] The appeal was reviewed by Lawrence Simon[21], a BCBSLA Medical Director not involved in the original denial, who agreed that the request did not meet the criteria for medical necessity. Following Blue Cross protocols, Dr. Simon elevated the request for "specialty match" review[22].

On October 20, 2018, following review by Allmed Healthcare Management, an Independent Medical Review organization[23], BCBSLA upheld the denial of the authorization on appeal as the treatment was not medically necessary.[24] BCBSLA found that:

> "Image Guidance in Radiation Oncology and Special Treatment Procedure and Special Physics Consult do not apply as image guidance for proton beam therapy will not be utilized and there is no extra time, effort, or resources associated with complex radiation therapy required. The AIM guidelines: Radiation Oncology, Proton Beam Therapy, state that proton beam radiation therapy is not considered medically necessary in adult patients with head and neck cancer…. Although there are several trials currently underway, there are

---

[18] ROA. 735-744
[19] ROA. 757
[20] ROA. 720-825
[21] ROA. 760
[22] ROA. 760
[23] ROA. 820-825
[24] ROA. 793-819

currently no published randomized studies comparing proton therapy to Intensity Modulated Radiation Therapy (IMRT) in the treatment of head and neck cancers."

On October 30, 2018, MD Anderson Proton Therapy Center instituted a second level appeal by requesting an urgent external review by an independent review organization ("IRO").[25]  Following its independent review, Medical Review Institute of America, LLC ("MRIA")[26] sent correspondence to Robert Salim dated October 31, 2018, stating that the prior denial of the requested PBT was upheld.[27]

A Petition ("Petition") commencing this civil action, entitled *Robert L. Salim v. Blue Cross and Blue Shield of Louisiana,"* was filed on February 28, 2019, in the Tenth Judicial District Court, Parish of Natchitoches, State of Louisiana, bearing Case Number 90,952, Division "A".[28]  On April 18, 2019, BCBSLA timely filed a Notice of Removal.[29]  On February 21, 2020, the Parties entered into a stipulation that ERISA governed the Plan, all state law claims are preempted by ERISA, and BCBSLA has full discretionary authority to determine eligibility for benefits and construe the terms of the Plan.[30]

[25] ROA. 827-870
[26] MRIA is an IRO. Pursuant to regulations of the Louisiana Department of Insurance (LDI) and *La. R.S. 22:2391, et seq.*, and federal law, IROs such as MRIA are randomly allotted by the LDI to review internal decisions made by medical insurers in response to member appeals.  MRIA is not affiliated with BCBSLA in any manner.
[27] ROA. 871-875
[28] ROA. 16-22
[29] ROA. 9-14
[30] ROA. 85-86

On December 4, 2020, BCBSLA filed its submission brief on the merits based on the administrative record.[31]  On December 14, 2020, Plaintiff filed his submission brief on the AR.[32]

On June 13, 2022, the Magistrate Judge issued his Report and Recommendation (R&R)[33] finding in favor of the Plaintiff.  On June 27, 2022, BCBSLA filed objections to the Magistrate Judge's R&R.[34]  On June 29, 2022 the District Court entered a Judgment[35] which accepted the R&R of the Magistrate Judge and only ordered BCBSLA to pay Plaintiff's "medical bills stemming from his receipt of the subject PBT cancer treatments."

On July 13, 2022, Plaintiff filed a Motion for Attorney Fees.[36]  Prior to the expiration of the delays for BCBSLA to file a response pursuant to the District Court's local rules, the Magistrate Judge granted Plaintiff's Motion for Attorney Fees and awarded $25,000.00.[37]  The award was nearly two times (2x) the amount requested by the Plaintiff and allegedly supported by the evidence submitted by Plaintiff in support of the Motion for Attorney Fees.[38]

---

[31] ROA. 100-111
[32] ROA. 128-133
[33] ROA. 134-152
[34] ROA. 153-171
[35] ROA. 172-173
[36] ROA. 174-175
[37] ROA. 194
[38] ROA. 186-192

On July 27, 2022, BCBSLA filed a Motion for New Trial or to Amend the Judgment.[39]  On August 9, 2022, BCBSLA filed an Objection to the Magistrate Judge's award of Attorney Fees.[40]

On August 11, 2022, the District Court[41] entered an Amended Judgment.[42] The Amended Judgment in favor of Appellee/Plaintiff, Salim, reversed the denial of benefits by BCBSLA for PBT and remanded the matter to BCBSLA for submission of those claims by Salim and/or his medical care providers, and for a full and fair determination of benefits due under the Plan as to those claims for PBT.

The Amended Judgment also dismissed Salim's claim for penalties, denied BCBSLA's Motion for New Trial[43] as moot in light of the Amended Judgment and remanded the issue of attorney fees back to the Magistrate Judge.

The issue of attorney fees is still pending.

BCBSLA filed a timely Notice of Appeal.[44]

---

[39] ROA. 195-199
[40] ROA. 207-218
[41] For the remainder of the brief, Appellant will refer to the decision of the "District Court" as the District Judge adopted the R&R of the Magistrate Judge.
[42] ROA. 222-223
[43] ROA. 195-199
[44] ROA. 238-239

## SUMMARY OF THE ARGUMENT

BCBSLA correctly denied Plaintiff's authorization request for PBT to treat his neck and throat cancer as not medical necessary. BCBSLA's denial was based on a "fair reading of the Plan" and was not an "abuse of discretion".

## 1.     THE DISTRICT COURT USED THE INCORRECT STANDARD OF REVIEW FOR ERISA BENEFIT CASES

The District Court made a distinction between a claim for coverage for medical services (PBT) and a claim for benefits under the Plan. [45]  However, there is no distinction – a claim for medical services IS a claim for benefits under the Plan. The District Court's erroneous holding that Plaintiff's claim is not a claim for benefits interdicted the proper legal analysis, the two-step process-abuse of discretion standard as held consistently by the Fifth Circuit for ERISA benefit claims.[46]

The District Court held that that the two-step process-abuse of discretion standard enunciated by this Honorable Court was not applicable to this matter because Salim disputes the "factual finding" by BCBSLA that PBT is not "medically necessary".  Because the only place "medically necessary" is defined is the Plan then BCBSLA's interpretation of the Plan is in dispute and must be resolved. For the

---

[45] ROA. 147 Fn 6

[46] *Aucoin*; citing ; *Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc.,* 168 F.3d 211, 213 (5th Cir. 1999).

District Court to hold otherwise is clear legal error.  The proper standard of Review for the District Court is set out in great detail in Part II of this Brief.

If the District Court had used the proper legal standard - abuse of discretion - in deciding this matter, it would have found that BCBSLA's denial of PBT therapy for the Plaintiff as not medical necessary pursuant to the Plan's definition was not an abuse of discretion.

 The Amended Judgment of the District Court should be reversed and judgment entered for BCBSLA.

**2.    THE DISTRICT COURT DID NOT APPLY THE UNITED STATES FIFTH CIRCUIT COURT OF APPEALS' "TWO-STEP PROCESS WHEN CONDUCTING [AN] ABUSE OF DISCRETION REVIEW" OF BCBSLA'S DENIAL IN THIS MATTER**

BCBSLA's denial of the Plaintiff's request for authorization of PBT as not "medically necessary" was based on a fair reading of the Plan and, therefore, there is no abuse of discretion.

The Plan does not provide benefits for treatment that is not medically necessary.[47]

"Medically Necessary" is defined in the Plan as:

> <u>Medically Necessary (or Medical Necessity)</u> – Healthcare services, treatment, procedures, equipment, drugs, devices, items or supplies that a Provider, exercising prudent clinical judgment, would provide to a patient for the purpose of preventing,

---

[47] ROA. 673

evaluating, diagnosing or treating an illness, injury, disease or its symptoms, and that are:

**A.** in accordance with nationally accepted standards of medical practice;

**B.** clinically appropriate, in terms of type, frequency, extent, level of care, site and duration, and considered effective for the patient's illness, injury or disease; and

**C.** not primarily for the personal comfort or convenience of the patient, or Provider, and not more costly than alternative services, treatment, procedures, equipment, drugs, devices, items or supplies or sequence thereof and that are as likely to produce equivalent therapeutic or diagnostic results as to the diagnosis or treatment of that patient's illness, injury or disease. For these purposes, "nationally accepted standards of medical practice" means standards that are based on credible scientific evidence published in peer-reviewed medical literature generally recognized by the relevant medical community, Physician Specialty Society recommendations and the views of Physicians practicing in relevant clinical areas and any other relevant factors.[48]

For these purposes, "nationally accepted standards of medical practice" means standards that are based on credible scientific evidence published in peer-reviewed medical literature generally recognized by the relevant medical community, Physician Specialty Society recommendations and the views of Physicians practicing in relevant clinical areas and any other relevant factors.[49]

The plain and fair reading of the Plan requires Plaintiff to prove PBT was "medically necessary" by producing evidence to meet parts A, B and C of the

---

[48] ROA. 635
[49] ROA. 635

definition of "Medically Necessary".[50]   There is no evidence in the AR that the Plaintiff met his burden as to parts B and C above.

Furthermore, the District Court relied almost exclusively on the information provided by Plaintiff's physician Dr. Clifton Fuller[51] that PBT is medically necessary for the Plaintiff.  However, the District Court again failed to consider the provisions of the Plan, which provides that:

> "The fact that a Physician or other Provider prescribes, orders, recommends or approves a service or supply, or that a court orders a service or supply to be rendered, **does not make it Medically Necessary**." (Emphasis Added)[52]

Therefore, based on fair reading of Plan language, Dr. Fuller's opinion alone does not make PBT medically necessary for the Plaintiff.

Based on a fair reading of the Plan and the AR, Plaintiff did not meet his burden as to part A, B, and C of the Plan definition of "medically necessary". Therefore, BCBSLA's denial was not an abuse of discretion.

The Amended Judgment of the District Court should be reversed.

---

[50] The definition of Medically Necessary uses the conjunctive "and" for all 3 parts of the definition.
[51] ROA. 149-151
[52] ROA. 655

### 3.   BCBSLA DID NOT ABUSE ITS DISCRETION BASED ON THE EVIDENCE IN THE AR

BCBSLA's denial of the authorization request for PBT was not an abuse of discretion. There is concrete and substantial evidence in the AR to support the denial of Plaintiff's authorization request for PBT, including but is not limited to, the determination by two BCBSLA Medical Directors[53] that the requested treatment did not meet AIM guidelines for medical necessity, as well as the independent, specialty-match review by AllMed upholding the denial of PBT as not medical necessary.[54]

The AR also contains a second IRO opinion from MRIA upholding the denial of the requested PBT.[55] The IRO opinions from AllMed and MRIA were rendered by board certified radiation oncologist.

The AR is replete with evidence to support BCBSLA's denial of Plaintiff's claim for PBT. Therefore, BCBSLA did not abuse its discretion.

The District Court's Amended Judgment should be reversed.

---

[53] ROA.760, ROA. 730-734, and ROA. 735-744
[54] ROA. 730-744
[55] ROA. 871-875.

# ARGUMENT

## I.    STANDARD OF REVIEW

The District Court granted Summary Judgment for the Plaintiff.[56]  "We (5th Circuit) review a district court's grant of summary judgment in ERISA cases de novo, applying the same standard as the district court."[57]

## II.    ERISA REVIEW STANDARD-DISTRICT COURT

Under ERISA, when the language of an ERISA plan grants discretion to an administrator to interpret the plan and determine eligibility for benefits, a court will reverse an administrator's decision only for abuse of discretion.[58]    The administrator's decision must be supported by substantial evidence in the administrative record to avoid being reversed by the Court.[59] Substantial evidence is "that which a reasonable mind might accept as sufficient to support a conclusion."[60]

The Fifth Circuit applies "a two-step process when conducting [an] abuse of discretion review."[61]  First, a court must determine the legally correct interpretation

---

[56]  ROA. 151 Fn 8.

[57]  *Lafleur v. Louisiana Health Service and Indem. Co.*, 563 F.3d 148, 153 (5th Cir. 2009) *citing Wade v. Hewlett–Packard Dev. Co. LP Short Term Disability Plan,* 493 F.3d 533, 537 (5th Cir. 2007).

[58]  *Aucoin v. RSW Holdings, L.L.C.*, 494 F.Supp.2d 418, 421–22 (M.D. La. 2007); citing *High v. E–Systems, Inc.,* 459 F.3d 573 (5th Cir. 2006); *Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc.,* 168 F.3d 211, 213 (5th Cir. 1999).

[59]  *Id.* at 422-423.

[60]  *Id.*

[61]  *Stone v. Unocal Termination Allowance Plan*, 570 F.3d 252, 257, (5th Cir.2009).

of the plan.[62]  To determine whether the administrator's interpretation of the plan was legally correct, the key factor a court must consider is "whether the administrator's interpretation was consistent with a fair reading of the plan."[63]  If the administrator's interpretation of the plan was legally correct, "the inquiry ends and there is no abuse of discretion."[64]

Only if the court finds the administrator did not give the plan the legally correct interpretation will it determine whether the administrator's decision was an abuse of discretion.[65]  In doing so, the Court "must inquire only whether the record adequately supports the administrator's decision; from that inquiry it can conclude that the administrator abused its discretion if the administrator denied the claim '*without some concrete evidence in the administrative record*.'"[66]  Abuse of

---

[62] *Ellis v. Liberty Life Assur. Co. of Boston,* 394 F.3d 262, 269-70 (5th Cir.2004).

[63] *Id.* Other factors the court considers are "whether the administrator has given the plan a uniform construction…and…any unanticipated costs resulting from different interpretations of the plan." *Id; see also Stone,* 570 F.3d at 258.

[64] *Stone,* 570 F.3d at 258; *see also Ellis,* 394 F.3d at 269-70 and *Tolson v. Avondale Industries, Inc.,* 141 F.3d 604, 608 (5th Cir.1998) ("A determination that a plan administrator's interpretation is legally correct pretermits the possibility of abuse of discretion.").

[65] *Id.*

[66] *Truitt v. Unum Life Ins. Co. of Am.,* 729 F.3d 497, 513-14 (5th Cir.2013), cert. denied, -- U.S. -- 134 S.Ct. 1761, 188 L.Ed.2d 593 (2014) (holding that record contained "concrete evidence" supporting denial of plaintiff's ERISA disability claim, including e-mails showing "that [plaintiff's] travel schedule was rigorous" and surveillance video showing plaintiff "walking, driving, and bending down, and lifting and carrying boxes, bags, coolers, pumpkins, and a dog"); *Gooden v. Provident Life & Accident Insurance Co.,* 250 F.3d 329, 333 (5th Cir. 2001) (quoting *Vega v. Nat'l Life Ins. Servs., Inc.*, 188 F.3d 287, 302 (5th Cir. 1999)(emphasis added).  Under the law of this circuit, in an ERISA matter, when assessing factual questions the court is constrained to the administrative record considered by the administrator in making the challenged decision. *See Vega,* 188 F.3d at 299-300.

discretion is synonymous with the arbitrary and capricious standard.[67] A decision is arbitrary and capricious only if "made without a rational connection between the known facts and the decision or between the found facts and the decision."[68] Ultimately, the "review of the administrator's decision need not be particularly complex or technical; it need only assure that the administrator's decision fall somewhere on a continuum of reasonableness – even if on the low end."[69]

## 1. **THE DISTRICT COURT USED THE INCORRECT STANDARD OF REVIEW FOR ERISA BENEFIT CASES**

In Paragraphs 9 and 16 of Plaintiff's Petition[70], Plaintiff makes an explicit claim for benefits under the Plan. Additionally, in the Notice of Removal,[71] BCBSLA alleges that Plaintiff's claim is a claim for benefits under the Plan which Plaintiff has not disputed. Plaintiffs claim for medical services (PBT) to be paid falls squarely under § 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B).[72]

---

[67] *Wade*, 493 F.3d at 540.

[68] *Meditrust,* 168 F.3d at 215 (quoting *Bellaire Gen. Hosp. v. Blue Cross Blue Shield of Michigan*, 97 F.3d 822, 828-829 (5th Cir. 1996).

[69] *Vega,* 188 F.3d at 297.

[70] ROA. 17-18

[71] ROA. 9-22

[72] (a) Persons Empowered to Bring Civil Action – A civil action may be brought
(1) by a participant or beneficiary –
(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;

Plaintiff's claim for PBT is without a doubt a claim for medical services which is defined as a benefit[73] under the Plan.

The District Court made a distinction between a claim for coverage for medical services (PBT) and a claim for benefits under the Plan.[74]  However, there is no distinction – a claim for medical services IS a claim for benefits under the Plan. The District Court's erroneous holding that Plaintiff's claim is not a claim for benefits interdicted the proper legal analysis, the two-step process-abuse of discretion standard as held consistently by the Fifth Circuit.[75]  The District Court incorrectly holds that it is a dispute about a factual finding of whether PBT is "medically necessary". [76]

The District Court held that that the two-step process-abuse of discretion enunciated by this Honorable Court was not applicable to this matter because Salim disputes the factual finding that PBT is not "medically necessary".  Because the only place "medically necessary" is defined is the Plan then BCBSLA interpretation of the Plan is necessarily in dispute and must be resolved. For the District Court to hold otherwise, is clear legal error.

---

[73] Benefits – Coverage for healthcare services, treatment, procedures, equipment, drugs, devices, items or supplies covered under this Plan. We base the payment for Benefits on the Allowable Charge for Covered Services. (ROA. 729)
[74] ROA. 147 Fn6
[75] *Aucoin v. RSW Holdings, L.L.C.*, 494 F.Supp.2d 418, 421–22 (M.D. La. 2007); citing ; *Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc.,* 168 F.3d 211, 213 (5th Cir. 1999).
[76] ROA. 147

If the District Court had used the proper legal standard - abuse of discretion - in deciding this matter, it would have found that BCBSLA's denial of PBT therapy for the Plaintiff as not medical necessary pursuant to the Plan's definition was not an abuse of discretion.

As discussed more fully in sections 2 and 3 below, BCBSLA met the two-step process set out by this Honorable Court.

For this reason alone, the District Court's Amended Judgment should be reversed.

**2.  <u>THE DISTRICT COURT DID NOT FOLLOW THIS HONORABLE COURT'S TWO-STEP PROCESS WHEN CONDUCTING [AN] ABUSE OF DISCRETION REVIEW.</u>**

To determine whether the administrator's interpretation of the Plan was legally correct, the key factor a court must consider is "whether the administrator's interpretation was consistent with a fair reading of the plan."[77]  If the administrator's interpretation of the plan was legally correct, "the inquiry ends and there is no abuse of discretion."[78]

---

[77] *Aucoin v. RSW Holdings, L.L.C.*, 494 F.Supp.2d 418, 421–22 (M.D. La. 2007); citing ; *Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc.,* 168 F.3d 211, 213 (5th Cir. 1999)..  Other factors the court considers are "whether the administrator has given the plan a uniform construction…and…any unanticipated costs resulting from different interpretations of the plan." *See also Stone,* 570 F.3d at 258.

[78] *Stone,* 394 F.3d at 269-70 and *Tolson v. Avondale Industries, Inc.*, 141 F.3d 604, 608 (5th Cir.1998) ("A determination that a plan administrator's interpretation is legally correct pretermits the possibility of abuse of discretion.").

The Plan fully defines "Medically Necessary"[79] as:

Medically Necessary (or Medical Necessity) – Healthcare services, treatment, procedures, equipment, drugs, devices, items or supplies that a Provider, exercising prudent clinical judgment, would provide to a patient for the purpose of preventing, evaluating, diagnosing or treating an illness, injury, disease or its symptoms, and that are:

**A.** in accordance with nationally accepted standards of medical practice;

**B.** clinically appropriate, in terms of type, frequency, extent, level of care, site and duration, and considered effective for the patient's illness, injury or disease; and

**C.** not primarily for the personal comfort or convenience of the patient, or Provider, and not more costly than alternative services, treatment, procedures, equipment, drugs, devices, items or supplies or sequence thereof and that are as likely to produce equivalent therapeutic or diagnostic results as to the diagnosis or treatment of that patient's illness, injury or disease.

For these purposes, "nationally accepted standards of medical practice" means standards that are based on credible scientific evidence published in peer-reviewed medical literature generally recognized by the relevant medical community, Physician Specialty Society recommendations and the views of Physicians practicing in relevant clinical areas and any other relevant factors.

The Plan further provides in Article XVII as follows:

B. Any of the limitations and exclusions listed in this Benefit Plan may be deleted or revised as shown in the Schedule of Benefits. Unless otherwise shown as covered in the Schedule of Benefits, the following are not covered, REGARDLESS OF CLAIM OF MEDICAL NECESSITY:

---

[79] ROA. 635

1. Services, treatments, procedures, equipment, drugs, devices, items or supplies that are not **Medically Necessary**. The fact that a Physician or other Provider prescribes, orders, recommends or approves a service or supply, or that a court orders a service or supply to be rendered, does not make it Medically Necessary. (Emphasis Added)[80]

On October 10, 2018, M.D. Anderson Cancer Center sent an authorization request to BCBSLA .[81] On October 12, 2018,  BCBSLA sent a letter to Salim denying authorization for *Proton Treatment Delivery, Simple* as not medically necessary.[82] On October 12, 2018, BCBSLA also denied authorization for *Special Radiation Treatment Procedure and Guidance for Localization of Target Delivery of Radiation Treatment Delivery* as not medically necessary.[83] The October 12, 2018 denial was made by Dr. Dierdre Barfield, a Senior Medical Director at BCBSLA who found:

> We cannot approve this request for a Special Treatment Procedure. This is used when the doctor performing the radiation therapy uses extra steps when planning the treatment. It is used only in certain situations. It is used if you will also be getting intravenous chemotherapy with radiation. Your doctor did not tell us that this is the case for you. For this reason, this procedure is not medically necessary for you.

In short, BCBSLA determined that the PBT for Salim was not medically necessary because it is a special type of radiation treatment that is used to treat head

---

[80] ROA. 655
[81] ROA. 720-729
[82] ROA. 730-734
[83] ROA. 735-744

and neck cancer when the area has been radiated before. The facts in the administrative record show that Salim had not had his neck radiated before the original authorization request.[84] Dr. Barfield used the AIM Clinical Appropriateness Guidelines in making this determination.[85]

On October 17, 2020, Salim appealed the denial. On appeal, the denial was reviewed by Dr. Lawrence Simon, a BCBSLA Medical Director not involved in the original denial. Dr. Simon agreed that the requested treatment did not meet the medical necessity criteria guidelines and, following BCBSLA protocols, elevated the appeal for an independent, specialty-match review.[86] On October 20, 2018, BCBSLA upheld the denial on appeal as the treatment was not medically necessary.[87] Sanath Kumar, MD a board-certified radiation oncologist with AllMed Health Management ("AllMed"),[88] in upholding the denial found that:

> "The policies for Image Guidance in Radiation Oncology and Special Treatment Procedure and Special Physics Consult do not apply as image guidance for proton beam therapy will not be utilized and there is no extra time, effort, or resources associated with complex radiation therapy required. The AIM guidelines: Radiation Oncology, Proton Beam Therapy, state that proton beam radiation therapy is not considered medically necessary in adult patients with head and neck cancer....Although there are several trials currently underway, there are currently no published randomized studies

---

[84] ROA. 731
[85] ROA. 731-732
[86] ROA. 760
[87] ROA. 793-819
[88] AllMed is an URAC accredited IRO who conducts both external reviews of medical decisions made by medical insurers and conducts internal reviews of medical decision made by medical insurers like BCBSLA in this case. URAC is a non-profit organization that helps promote health care quality by providing accreditation for companies and organization that offer medical services.

comparing proton therapy to Intensity Modulated Radiation Therapy (IMRT) in the treatment of head and neck cancers. Therefore, the requested proton beam therapy is not medically necessary for this patient based on the clinical documentation and the policy criteria."

October 30, 2018, MD Anderson Proton Therapy Center instituted a second level appeal by requesting an urgent external review by an IRO. On October 31, 2018, MRIA, the IRO, also found that PBT was not medically necessary in the case of Salim. MRIA specifically found that the "AIM guidelines: Radiation Oncology, Proton Beam Therapy, state that proton beam radiation therapy is not considered medically necessary in adult patients with head and neck cancer."[89]

The Plan's language is clear and unambiguous that it does not provide benefits for treatments like PBT that are not medically necessary. BCBSLA's interpretation was a fair reading of the Plan, as it relied upon nationally accepted standards as enunciated in the initial denial, as well as the appeal decision and the IRO decision. BCBSLA's interpretation that PBT is not medically necessary within the definition of that term in the Plan for Salim is supported by concrete evidence in the AR and therefore is a fair reading of the Plan.

In addition, in order to find the PBT treatment medically necessary, Salim has the burden of proving[90] that not just part A of the definition of Medical Necessary is

---

[89] ROA. 872

[90] "Under section 1132(a)(1)(B) has the initial burden of demonstrating entitlement to benefits under an ERISA plan." *Koch v. Metropolitan Life Insurance Company*, 425 F.Supp.3d 741, 745 (N.D.Tex. 2019) *citing Perdue v. Burger King Corp.*, 7 F.3d 1251, 1254 n.9 (5th Cir. 1993).

met but that A, B, and C are all met as the definition in the Plan uses the conjunctive

connector "and".   Plaintiff relies heavily on opinions from the doctors at MD

Anderson, as does the R&R of the Magistrate Judge. However, there is no evidence

in the AR that the Plaintiff met his burden as to parts B and C above.  BCBSLA's

reading of the Plan in requiring the Plaintiff to prove PBT was "medically necessary"

by producing evidence to meet all three parts (A,B, and C) was legally correct and a

fair reading of the Plan.

The District Court relied on the information provided by Plaintiff's physician

Dr. Clifton Fuller that PBT is medically necessary for the Plaintiff.  However, the

District Court failed to consider Article XVII of the Plan (cited above).  Based on

the Plan language, Dr. Fuller's opinion does not make PBT medically necessary for

the Plaintiff. The error of the legal reasoning by the District Court is personified by

the Magistrate Judge's finding that the case does not present issues as to Salim's

eligibility for benefits, or BCBSLA's construction of the terms of the Plan.[91]

The U.S. Supreme Court has instructed federal courts to develop a federal

common law of rights and obligations under ERISA-regulated benefits plans.[92] "In

applying that dictate to the resolution of disputes regarding participants rights under

---

[91] ROA. 147

[92] *In re Roy*, 726 So.2d 1048, 1050, 31,383 La.App. 2 Cir. 1/20/99, 3 (La.App. 2 Cir. 1999) *citing Ryan by Capria–Ryan v. Federal Express Corp.*, 78 F.3d 123 (3d Cir. 1996), *citing, Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989).

ERISA benefit plans, the federal courts have followed traditional principles of trust and contract law."[93]   The District Court did not treat Plaintiff's claim as one actually based on enforcing the provisions of the Plan, i.e. contract interpretation.   The District Court explicitly did not apply traditional principles of trust and contract law in rendering its opinion on the rights of Salim under the Plan regarding PBT.   In fact, the District Court found this case does not involve BCBSLA's construction of the terms of the Plans.[94]   This flies in the face of the U.S., Supreme Court and this Honorable Court's jurisprudence on ERISA benefits cases. To ignore the terms of the Plan and the administrator's interpretation of the Plan is legal error and the cause of reversal of the District Court's Amended Judgment.

The District Court further does not address the construction of the Plan by BCBSLA. The District Court held that Salim proved that PBT was a nationally accepted standard of care for advanced head and neck cancer in 2018.[95] Even if that is true which is denied, then that still does not make PBT medically necessary under the Plan.   Under the definition of medically necessary, nationally accepted standard of care is only one part of a three-part test.[96]   The AR does not support that PBT

---

[93] *In re Roy*, 726 So.2d 1048, 1050, 31,383 La.App. 2 Cir. 1/20/99, 3 (La.App. 2 Cir. 1999) c*iting Sunbeam-Oster Co. Group Ben. v. Whitehurst*, 102 F.3d 1368 (5th Cir. 1996); *Ryan by Capria–Ryan, supra*.
[94] ROA. 147
[95] The burden of proof used by the Magistrate Judge is unclear but appears to be a preponderance of the evidence which is legal error.
[96] ROA. 635

meets parts B and C of the definition of medically necessary under the Plan. More importantly, the District Court does not discuss the B and C provisions as they relate to Salim's claims. Therefore, the District Court's interpretation of the Plan is not a fair reading of the Plan.

Based on a fair reading of the Plan and the AR, Plaintiff did not meet his burden as to parts A,B, and C of the definition of "medically necessary".

Because BCBSLA made a legally correct or fair reading of the Plan, there is no abuse of discretion.

The Judgment of the District Court should be reversed.

Out of an abundance of caution, BCBSLA will address the second part of this Honorable Court's two-step process in reviewing an administrator's decision to deny benefits -abuse of discretion.

### 3.    BCBSLA DID NOT ABUSE ITS DISCRETION BASED ON THE EVIDENCE IN THE AR.

While BCBSLA contends that the Court's analysis stops here because the interpretation of the Plan was legally correct, out of an abundance of caution, BCBSLA moves to the second step of the Fifth Circuit's analysis and addresses whether the denial of Plaintiff's authorization request was an abuse of discretion.

BCBSLA adopts all arguments made in Part 1 of this section.

BCBSLA's denial of the authorization request for Salim's treatment of neck cancer was based on concrete evidence in the AR. The AR is replete with

information from which one should rationally conclude that the treatment at issue was not a covered benefit as PBT is not medically necessary.[97]

Therefore, the authorization request at issue does not meet the definition of medical necessity in the Plan.[98] BCBSLA acted rationally and made a reasonable decision based on all evidence contained in the Administrative Record and a fair reading of the Plan language in denying Salim's claim for health insurance benefits. There is a clear, rational connection between the known facts in the Administrative Record and the decision to deny Salim's authorization request.[99]

In a similar case,[100] the plaintiff filed suit against his employee benefit plan for denying a preauthorization for proton beam therapy to treat his prostate cancer. The Plan in *Baxter* had a similar exclusion as the Plan in this matter. The Baxter Plan provided that:

> "The Plan also includes an exclusion for services that are 'Not Medically Necessary'.[101] That provision excludes: Services and

---

[97] ROA. 731-732, 877
[98] ROA. 617
[99] ROA. 730-744, 793-819, 872
[100] *Baxter v. MBA Group Ins. Trust Health and Welfare Plan*, 958 F.Supp.2d 1223, 1225 (W.D.Wash. 2013).
[101] "The Plan defines "Medically Necessary or Medical Necessity" as follows:
Health care services or supplies that a Physician or other health care Provider, exercising prudent clinical judgment, would provide to a patient for the purpose of preventing, evaluating, diagnosing or treating an Illness, Injury, disease or its symptoms, and that are:
• In accordance with generally accepted standards of medical practice;
• Clinically appropriate, in terms of type, frequency, extent, site and duration, and considered effective for the patient's Illness, Injury or disease, and;
• Not primarily for the convenience of the patient, Physician or other health care Provider, and not more costly than an alternative service or sequence of services or supply at least as likely to

supplies that are not Medically Necessary for the treatment of an Illness or Injury, except for preventative care benefits specifically provided under the Contract."

The Plan Administrator in *Baxter* found that "Charged-particle irradiation with proton beams is considered not 'medically necessary' in patients with clinically localized prostate cancer because the clinical outcomes with this treatment have not been shown to be superior to other approaches including intensity modulated radiation therapy (IMRT) or conformal radiation therapy. Charged-particle irradiation with proton beams is more costly than other alternatives for treatment and is therefore not medically necessary."[102]

Similarly, in this matter BCBSLA found that PBT is not considered medically necessary in adult patients with head and neck cancer…. Although there are several trials currently underway, there are currently no published randomized studies comparing proton therapy to Intensity Modulated Radiation Therapy (IMRT) in the treatment of head and neck cancers."[103] As in Baxter, there was no clinical tests that show PBT is medically superior to IMRT in treating cancer, and the denial by BCBSLA was not an abuse of discretion.

---

produce equivalent therapeutic or diagnostic results as to the diagnosis or treatment of that patient's Illness, Injury or disease." (Emphasis Added). *Baxter* at 1228-1229.
[102] *Baxter* at 1225.
[103] ROA. 793-819

Therefore, Salim cannot establish that BCBSLA's decision to deny the authorization for PBT as an excluded benefit was an abuse of discretion. The evidence in the AR shows that two BCBSLA Medical Directors and two independent medical experts in the field of radiation oncology found the denial of the authorization for PBT was proper.

Therefore, the District Court's Amended Judgment should be reversed.

## CONCLUSION

BCBSLA submits that the Amended Judgment[104] in favor of Appellee/Plaintiff, Salim, reversing the denial of benefits by BCBSLA for PBT should be reversed.

BCBSLA further submits that a judgment should be rendered in its favor and against Plaintiff holding that BCBSLA's denial of Salim's authorization for PBT was based on a fair reading of the Plan and was not an abuse of discretion.

---

[104] ROA. 222-223

By:    */s/* Douglas M. Chapoton

Richard Sherburne, Jr. (LA Bar No. 02106)
Jessica W. Chapman (LA Bar No. 31097)
Douglas M. Chapoton (LA Bar No. 25616)
Erica S. Aguillard (LA Bar No. 34753)
5525 Reitz Avenue (70809)
Post Office Box 98029
Baton Rouge, Louisiana 70898-9029
Telephone: (225) 298-1444
Facsimile: (225) 297-2760
Richard.Sherburne@bcbsla.com
Jessica.Chapman@bcbsla.com
Douglas.Chapoton@bcbsla.com
Erica.Aguillard@bcbsla.com

*Attorneys for Appellant/ Defendant Louisiana Health Service & Indemnity Company, d/b/a Blue Cross and Blue Shield of Louisiana*

## **CERTIFICATE OF SERVICE**

This is to certify that the foregoing instrument has been served via the Court's ECF filing system in compliance with Rule 25(b) and (c) of the Federal Rules of Appellate Procedure, on November 9, 2022, on all registered counsel of record, and has been transmitted to the Clerk of the Court.

<u>/s/ Douglas M. Chapoton</u>
Douglas M. Chapoton

## <u>CERTIFICATE OF COMPLIANCE</u>

1.     This brief complies with the type-volume limitation of FED. R. APP.

P. 32(A)(7)(B) because:

- this brief contains 7,357 words, excluding the parts of the brief exempted by FED. R. APP. P. 32(f).

2.     This brief also complies with the typeface requirements of FED. R.

APP. P. 32(A)(5) and the type requirements of FED. R. APP. P. 32(A)(6) because:

- this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2202 with a 14-point font named Times New Roman.

Signed on this 9th day of November, 2022, at Baton Rouge, Louisiana.


/s/ Douglas M. Chapoton
Douglas M. Chapoton